IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,      )
     )
v.      )      Criminal Action No. 1:15-CR-32
     )
LAWRENCE W. REESE,      )
     )
Defendant.      )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Lawrence W. Reese's Motion for Compassionate Release, additional Supplemental Motions for Relief, and Request for Home Confinement. Dkts. 265, 280, 282, 291. The Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). These matters have been fully briefed and are now ripe for disposition. Considering Defendant's Motion and the Government's Oppositions (Dkts. 278, 285), the Court DENIES the Motions for the following reasons.

## I. BACKGROUND

In late 2012, Defendant solicited his son to arrange a meeting between him and an individual, H.T., who was his son's friend and former classmate. Dkt. 99 ¶ 15. During the meeting, Defendant expressed his desire to burn down his own business to collect the insurance money and offered H.T. $30,000 to help him carry out the scheme, which H.T. later accepted. *Id.*

On February 6, 2013, an explosion occurred at Defendant's business, the Sub Shop, and H.T. was seen staggering away from the scene. *Id.* ¶¶ 11-12. Defendant was injured in the explosion and resulting fire. *Id.* Following the arson, Defendant filed a fraudulent insurance claim. *Id.* ¶ 19. Ultimately, Defendant's insurance company paid Defendant $34,000 as a result of his

1

fraudulent claim, and Defendant provided H.T. with $5,000 as payment for his participation in the offense. *Id.*

On February 12, 2015, Defendant was indicted in the Eastern District of Virginia on nine counts: (1) conspiracy to commit arson in violation of 18 U.S.C. § 844(n); (2) arson in violation of 18 U.S.C. § 844(i); (3) arson to commit mail fraud in violation of 18 U.S.C. § 844(h); (4) arson to commit wire fraud in violation of 18 U.S.C. §844(h); (5-8) mail fraud in violation of 18 U.S.C. §1341; and (9) wire fraud in violation of 18 U.S.C. §1343. Dkt. 1. After a four-day jury trial, Defendant was found guilty on all nine counts. Dkt. 64. On September 25, 2015, former U.S. District Judge Liam O'Grady sentenced Defendant to a term of 180 months' imprisonment followed by 5 years of supervised release. Dkt. 144 at 3-4. On September 16, 2016, the Fourth Circuit affirmed Defendant's convictions. *See United States v. Reese*, 659 F. App'x 741 (4th Cir. Sept. 12, 2016).

Since his incarceration, Defendant has filed numerous motions to vacate, reduce his sentence, or otherwise allow for compassionate release.[1] Judge O'Grady denied each of Defendant's prior motions. *See, e.g.*, Dkts. 207, 253.

On April 25, 2023, Defendant filed the pending motion for compassionate release. Dkt. 265. On July 20, 2023, this case was reassigned to this District Judge. On January 8, 2024, the Government filed its opposition. Dkt. 278. On January 17, 2024, Defendant filed his reply to the Government's opposition. Dkt. 279. Defendant subsequently filed two seemingly related supplemental motions for relief. Dkts. 280, 282.[2] And on May 13, 2024, the Government filed its response to Defendant's supplemental motions. Dkt. 285.

---

[1] *See, e.g.*, Dkts. 180, 181, 182, 183, 212, 216, 218, 220, 235, 241, 246.

[2] Dkt. 282 is a handwritten motion on a sealed copy of Defendant's medical records.

The Court will resolve all three of Defendant's motions together, as they seek similar relief on similar grounds.

## II. ANALYSIS

A motion for compassionate release may only be made by a defendant after "the defendant has fully exhausted all administrative rights to appeal" or "the lapse of 30 days from receipt of such request by the warden of defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Beyond the exhaustion requirement, a defendant seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing (1) that there are "extraordinary and compelling reasons" warranting compassionate release and (2) that analysis of the § 3553(a) factors weigh in favor of compassionate release. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Sprague*, 838 F. App'x 775, 775–76 (4th Cir. 2021); *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021). Applying those standards here, Defendant's motion fails at each stage of consideration: (1) Defendant has not satisfied the exhaustion requirement; (2) Defendant cannot demonstrate "extraordinary and compelling reasons" for release; and (3) the Section 3553(a) factors weigh against compassionate release here. Accordingly, Defendant's motion for compassionate release will be denied.

### A.    Exhaustion Requirement

Before filing a motion for compassionate release with the Court, a defendant must exhaust his administrative remedies. 18 U.S.C. § 3582(c)(1)(A). The exhaustion requirement is a non-jurisdictional claim-processing rule that may be waived by the Government. *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). If the Government raises the issue of exhaustion, the burden is on a defendant to show that he has exhausted his administrative remedies with the

Bureau of Prisons ("the BOP"). *United States v. Huitt*, 2021 WL 2226486, at *1 (W.D.N.C. June 2, 2021).

Here, the Government has raised the issue of exhaustion, and Defendant has failed to meet his burden. Dkt. 278 at 7. Defendant claims that he filed for compassionate release through the BOP on March 2, 2023, and 30 days have passed since the warden received notice of his request. Dkt. 265 at 3. To support this claim, Defendant attached an inmate request sheet dated March 6, 2023. Dkt. 265-1. The request sheet includes a request for compassionate release. However, Defendant has not shown that the warden or BOP were ever in receipt of this request. *See id.* The request sheet was not signed or dated by a BOP staff member on the designated line. *See id.* The Government has also alleged that, per reports provided to them from the BOP, the warden at FCI Fort Dix had not received any such requests from Defendant. Dkts. 278 at 8, 278-1.[3]

Upon review of this evidence, the Court is not satisfied that Defendant met his burden to establish that he has exhausted his administrative remedies. *See United States v. Bailey*, 2024 WL 1721081, at 5 (D. Md. Apr. 22, 2024) (holding that defendant failed to establish exhaustion based on the "absence of evidence" that the defendant submitted a request to the BOP). Because Defendant has failed to establish exhaustion, the motions will be denied. Nonetheless, the Court will address the merits of Defendant's Motions.

B. Extraordinary and Compelling Reasons

---

[3] Importantly, those same records do reflect Defendant's prior requests for compassionate release, which were disposed of in decisions by Judge O'Grady. Dkt. 278-1 (indicating that the records reflect two prior requests for compassionate release, but none at his current institute of confinement).

Defendant argues that he has established extraordinary and compelling reasons for compassionate release based on: (i) prison conditions during the COVID-19 pandemic, (ii) his poor health conditions, (iii) his age, and (iv) his time served on his sentence. Dkt. 265 at 8, 10, 13. None of these factors—taken individually or collectively—amount to extraordinary or compelling reasons for compassionate release.

Defendant is a sixty-five-year-old man dealing with obesity, hypertension, type II diabetes, and severe osteoarthritis in his hip. Dkts. 265 at 11, 285 at 6. Defendant suggests that his medical conditions put him at risk of more serious health outcomes if he contracts COVID-19. As courts of appeals have recognized, however, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 954, 597 (3rd Cir. 2020); *see also United States v. Little*, 2020 WL 3442173, at 2 (E.D. Va. June 23, 2020). Thus, for compassionate release due to COVID-19 risks, a defendant must show a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility. *United States v. Hargrove*, 30 F.4th 189, 196 (4th Cir. 2022); *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (per curiam); *see also United States v. Blevins*, 832 F. App'x 192, 192 (4th Cir. 2020) (per curiam). Here Defendant has failed to show either.

Although Defendant does suffer from some medical conditions, his medical records show that he is receiving medical care for these conditions at his facility. Dkts. 273, 274. Additionally, Defendant is fully vaccinated for COVID-19. In a similar case, this Court has found a defendant failed to establish a particularized susceptibility given his affirmative vaccination status. *See e.g. United States v. Drayton*, 2021 WL 4267306, at 8 (E.D. Va. Sept. 20, 2021) (finding that the defendant's underlying conditions only suggested a particularized susceptibility if his "vaccination

and apparent full recovery from COVID-19 are ignored."). Moreover, courts have generally recognized that – in light of advances in treatment, prevention, and vaccines – "the threat from COVID-19 has diminished nationwide and within the BOP." *United States v. Gonzales*, 2023 WL 6386139, at *2 (W.D.N.Y. Oct. 2, 2023).

Defendant claims that prisons in general are vulnerable to outbreaks of COVID-19. Dkt. 265 at 8-9. Although this may be true, it fails to establish Defendant's particularized risk of contracting COVID-19 at his prison facility. *Raia*, 954 F.3d at 597. Defendant claimed in a supplemental filing to the Court that in October of 2023 eight inmates of 5752 at his facility tested positive for COVID-19. Dkt. 275 at 1-2. Defendant's filing also notes that the infected inmates were placed in isolation after testing positive. *Id.* at 2. Be that as it may, these figures hardly constitute an outbreak and, even in the period before mass vaccinations, such figures did not demonstrate a particularized risk. *See United States v. Hawthorne*, 2021 WL 1912382, at *2 (E.D. Va. May 12, 2021) (holding that the defendant had failed to demonstrate a particularized risk where 12 inmates and 12 staff had COVID). As of February 2025, there is only one reported inmate with COVID-19 out of 4,002 inmates. Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited February 7, 2025). This, by no objective measure, can be considered an outbreak and fails to demonstrate a particularized risk to Defendant at his facility. Thus, Defendant has failed to establish extraordinary or compelling circumstances based on COVID-19.

Defendant's medical conditions also do not establish extraordinary and compelling circumstances warranting a sentence reduction. Although Defendant's medical conditions require consistent management, they do not substantially diminish his ability to provide self-care at FCI Fort Dix. Moreover, many of Defendant's medical conditions are common among the prison and

general population.[4] Defendant claims that compassionate release is justified because he has been sleeping more often to reduce his hip pain. Dkt. 282 at 1. This, contrary to Defendant's suggestion, is not a reason to grant compassionate release, but rather provides evidence to the Court that Defendant is able to manage his hip pain with increased rest. The Defendant's hip condition— while serious—is being effectively treated at FCI Fort Dix. Further, according to BOP records, Defendant is wheelchair bound but can transfer from his wheelchair to his bed and from his wheelchair to his walker without assistance. Dkt. 285-1 at 4. Defendant is also capable of maneuvering around his living quarters without assistance. *Id.* at 6. Courts have generally denied motions for compassionate release premised on similar health issues when defendants are mobile, even in a limited capacity, and able to care for themselves. *See e.g. United States v. Bunnell*, No. CR14- 00119- 001, 2019 WL 6114599, at 2 (D. Ariz. Nov. 18, 2019) (denying compassionate release for a defendant confined to a wheelchair for serious medical issues because his ability to provide self-care was not substantially diminished); *United States v. Amuso*, 2023 WL 5153425,

---

[4] *See, e.g., United States v. Moldover*, No. 14-cr-637, 2020 WL 6731111, at *9–10 (E.D. Pa. Nov. 13, 2020) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including . . . hypertension."); *United States v. Smith*, No. 20-cr-14, 2021 WL 682067, at *5 (E.D. Va. Feb. 22, 2021) ("Courts have found that certain conditions, including hypertension, generally do not establish a 'particularized susceptibility' to COVID-19 absent evidence that these individuals suffer from other underlying medical conditions."); *United States v. Zemlyansky*, No. 12-cr-171, 2020 WL 3638425, *2 (S.D.N.Y. July 6, 2020) (denying defendant's motion for compassionate release and explaining that hypertension is "a relatively common condition[]."); *United States v. Magnus*, No. 4:18-cr-40117, 2021 WL 1627290, *2 (D.S.D. Apr. 27, 2021) ("[O]besity alone or in combination with other conditions that might increase the risk is not an extraordinary and compelling reason warranting compassionate release in the age of the COVID-19 pandemic."); *United States v. Hayes*, 2020 WL 3611485, at *2-3 (M.D. Fla. July 2, 2020) ("Assuming federal prisoners experience [obesity and severe obesity] at about the same rate as the general population, if either one qualified as an extraordinary and compelling reason, roughly half of the prison population would be eligible for compassionate release."); *United States v. Burks*, No. 3:14-cr-208, 2021 WL 1394857, at *3 (W.D.N.C. Apr. 13, 2021) (denying motion for sentence reduction by 74-year-old defendant with heart disease, diabetes, and hypertension).

at 3 (E.D.N.Y. Aug. 10, 2023) (denying compassionate release for a wheelchair bound defendant who required assistance from other inmates to pick up food trays and make his bed). Thus, Defendant's medical conditions do not establish extraordinary and compelling circumstances warranting a sentence reduction.

Defendant also argues that he is entitled to compassionate release because of his age and time served. Under the revised guidelines, a defendant may be able to establish "extraordinary and compelling reasons" if the defendant: (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his term of imprisonment. U.S.S.G. § 1B1.13(b)(2) (U.S. Sent'g Comm'n 2023) (amend. Nov. 1, 2023). Although as of February 2025, Defendant is 65 years old, he has only served approximately 113 months of his 180-month sentence. This does not amount to either 10 years served *or* 75% of the Defendant's sentence. Further, neither Defendant nor the medical records submitted by the parties do not indicate any serious deterioration in physical or mental health. Thus, since Defendant does not meet the time served requirement in addition to the lack of health deterioration despite Defendant's age, compassionate release is not warranted.

In sum, none of the identified bases for compassionate release establish extraordinary and compelling circumstances warranting compassionate release. Accordingly, the Motions will also be denied on this basis.

### C. § 3553(a) Factors

Finally, even assuming *arguendo*, that Defendant has established extraordinary and compelling circumstances, that does not end the analysis. The Court must also examine the 18 U.S.C. § 3553(a) factors.[5]

---

[5] The relevant factors under § 3553(a)

8

Here, the Section 3553(a) factors do not support compassionate release for Defendant. In 2022, Judge O'Grady found that the 18 U.S.C. § 3553(a) factors weighed against Defendant's release. Dkt. 253 at 6. As noted at that time "the seriousness of the Defendant's offense weighs against his release." *Id.* The Fourth Circuit affirmed that decision. *United States v. Reese*, 2023 WL 2041522, at*1 (4th Cir. Feb. 16, 2023).

It is worth emphasizing again here; Defendant committed a dangerous crime which resulted in a fire and explosion, putting not only himself at risk but other members of the community and neighboring businesses.[6] Additionally, Defendant has a significant criminal history. At the time of sentencing, he was assessed as being in Criminal History Category III. Dkt. 99 ¶ 53. This Court notes the importance of considering the amount of time served. *United States v. Evans*, 2020 WL 5121331, at *7 (E.D. Va. Aug. 31, 2020).

Here, Defendant was given a sentence of 180 months' imprisonment. This reflects the mandatory minimum for Counts 1 and 2 running concurrently, the mandatory minimum for counts 3 and 4 running concurrently with each other, but consecutively to Counts 1 and 2. Dkt.

---

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; . . . (4) the kinds of sentence and the sentencing range established for–the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines, . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).

[6] Courts in other districts have also denied compassionate release for crimes of arson and fraud, when the crimes seem dangerous to their communities. *United States v. Broadus*, 2020 WL 4784686, at *3 (N.D. Tex. Aug. 18, 2020) (denying compassionate release for a defendant convicted for arson and wire fraud); *United States v. Genovese*, 2020 WL 4004164 (S.D.N.Y. July 15, 2020) (denying compassionate release for a defendant convicted of securities fraud).

132. For Counts 5, 6, 7, 8, and 9, Defendant was sentenced to only 1 day to run concurrently. *Id.* Reducing Defendant's sentence by sixty-seven months, as he has requested, would not reflect the seriousness of the offense, afford adequate deterrence, promote respect for the law, or provide just punishment (particularly as Defendant is serving the mandatory minimum for the crimes he committed). 18 U.S.C. § 3553(a); *see also Evans*, 2020 WL 5121331, at *7 (noting that reducing defendant's sentence by sixty-two months did not provide "just punishment" of offer "adequate deterrence" to the underlying criminal conduct). Thus, the Section 3553(a) factors do not support granting Defendant's motion.

### III. CONCLUSION

In sum, Defendant's Motions fail at each step of the compassionate release analysis: (i) Defendant has failed to establish that he met the exhaustion requirement; (ii) has failed to present extraordinary and compelling reasons for release; and (iii) has failed to demonstrate that the Section 3553(a) factors weigh in favor of granting compassionate release.

Accordingly, it is hereby ORDERED that Defendant's Motions for Compassionate Release (Dkts. 265, 280, 282, 291) are DENIED.

If Defendant wishes to appeal this decision, he must file a written Notice of Appeal with the Clerk of this Court within fourteen (14) days of receipt of this Memorandum Opinion and Order. Failure to file a timely Notice of Appeal waives the right to appeal.

The Clerk of the Court is directed to forward a copy of this Memorandum Opinion and Order to Defendant at his last address of record and to the Government.

It is SO ORDERED.

Alexandria, Virginia
April 16, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge